# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| DIGITALDOORS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 24-cv-03792-LKG |
| v. ) | |
| ) | Dated: February 27, 2026 |
| EAGLEBANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

In this patent-infringement action, the Plaintiff, DigitalDoors, Inc. ("DigitalDoors"), brings patent-infringement claims related to U.S. Patent Nos. 9,015,301 ("the '301 Patent"); 9,734,169 ( "the '169 Patent"); 10,182,073 ("the '073 Patent"); and 10,250,639 ("the '639 Patent") (collectively, "the Asserted Patents"), against the Defendant, EagleBank, arising from EagleBank's alleged use of certain data and information security technology.  ECF No. 29. EagleBank filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 34 and 34-1.  The motion to dismiss is fully briefed.  ECF Nos. 34, 36 and 38.  No hearing is necessary to resolve the matter.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Defendant's motion to dismiss (ECF No. 34) and (2) **DISMISSES** the amended complaint (ECF No. 29).

### II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

#### A.   Factual Background

In this patent-infringement action, DigitalDoors brings patent-infringement claims related to the Asserted Patents against EagleBank, arising from EagleBank's alleged use of certain data and information security technology.  ECF No. 29.  Specifically, DigitalDoors asserts the

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint, the Defendant's motion to dismiss and memorandum in support thereof, the Plaintiff's response in opposition, the Defendant's reply brief, and a subsequent notice post-briefing that the Defendant has provided to the Court. ECF Nos. 29, 34, 34-1, 36, 38, 41 and 41-1.

following claims in the amended complaint: (1) infringement of the '301 Patent; (2) infringement of the '169 Patent; (3) infringement of the '073 Patent; and (4) infringement of the '639 Patent. *Id.* at ¶¶ 99-221. As relief, Digital Doors seeks declaratory and injunctive relief and to recover monetary damages, attorneys' fees and costs from EagleBank. *Id.* at Prayer for Relief.

## The Parties

The Plaintiff, DigitalDoors, is a corporation that was established "to develop data security solutions for survivability and continuity of operations of the U.S. Government, including military and intelligence agencies." *Id.* at ¶ 2. DigitalDoors is the sole and exclusive owner of the Asserted Patents. *Id.* at ¶ 21.

The Defendant, EagleBank, is a financial institution that is located in Bethesda, Maryland that "uses, sells, offers to sell, and otherwise provides financial account and/or depository services to consumers throughout the State of Maryland." *Id.* at ¶ 4.

## The Asserted Patents

As background, the Asserted Patents "relate generally to unconventional methods and systems for organizing and processing data in a distributed system and, more particularly, those which extract specific sensitive content for specialized storage and subsequent reconstruction." *Id.* at ¶ 29. Although related, the claims of the Asserted Patents define "distinct inventions, and no single claim is representative." *Id.* at ¶ 27. DigitalDoors alleges that the Asserted Patents have priority to at least January 5, 2007. *Id.* at ¶ 30.

## The Sheltered Harbor Data Vaulting Initiative

The Government requires financial institutions to "oversee cybersecurity safeguards and ensure the privacy and continuity of client data." *Id.* at ¶ 16. The Sheltered Harbor Data Vaulting Initiative ("Sheltered Harbor") was founded by thirty-four financial institutions and is owned by FS-ISAC, Inc. *Id.* at ¶ 66. DigitalDoors alleges that cybersecurity systems that are compliant with Sheltered Harbor, or a functional equivalent, meet the Government's cybersecurity regulatory requirements. *Id.* at ¶ 17.

In this regard, DigitalDoors also alleges that the Sheltered Harbor specification is an "industry-driven initiative launched in 2015 to promote the stability of the U.S. financial markets" that operates "by protecting critical account information and data sets of market participants in order to facilitate the recovery and use of such information following a destructive cyberattack or other extreme loss of operational capability." *Id.* at ¶ 65. A key

goal of the Sheltered Harbor specification is to create secure backups of financial data across the financial sector by "extracting critical financial information from accounts and converting such information into Sheltered Harbor's industry-standard format." *Id.* at ¶ 71.  "The information is then validated, and encryption is applied before the information is transmitted to Sheltered Harbor's secure data vault for storage." *Id.*  But, the Sheltered Harbor specification is not a formal regulation enforced by any regulatory body—*i.e.*, Sheltered Harbor is not a required standard in the industry—though it is "it is a strongly encouraged, industry-led standard." *See id.* at ¶¶ 17 and 66.

The Plaintiff's Allegations

DigitalDoors alleges in the amended complaint that EagleBank has infringed upon the Asserted Patents, because EagleBank "makes, owns, operates, uses, or otherwise exercises control over systems and methods for processing data in a distributed system which are collectively complaint with the Sheltered Harbor Specification." *Id*. at ¶ 96.  In this regard, DigitalDoors alleges that there are several types of third-party systems, such as the Dell PowerProtect Cyber Recovery ("Dell System"), StoneFly and Veeam, that are examples of Sheltered Harbor-compliant technologies used by some financial institutions.[2] *See, e.g.*, *id.* at ¶¶ 74-81, 92, 93, 97, 103, 133, 169 and 199.

DigitalDoors identifies the accused instrumentalities in this case as "systems and methods for processing data in a distributed system" allegedly operated by EagleBank, "which are collectively compliant with the Sheltered Harbor specification." *Id.* at ¶ 96.  DigitalDoors also alleges that, "EagleBank makes, owns, operates, uses, or otherwise exercises control over systems and methods for processing data in a distributed system which provide substantially equivalent functionality (*i.e.*, providing data backup of critical customer account data to protect against system loss), in a substantially similar way (*i.e.*, by using a plurality of content data

---

[2] DigitalDoors acknowledged in a patent-infringement case brought in the United States District Court for the Eastern District of Louisiana that certain technologies may be Sheltered Harbor-compliant but not infringe the Asserted Patents.  *See* ECF No. 41-1 at 1, *DigitalDoors, Inc. v. Gulf Coast Bank & Trust Company*, No. 2:25-cv-00748-BSL-EJD (E.D. La.) ("Defendant's counsel Barry Bumgardner (who is also counsel to Q2) recently advised Plaintiff that while the Q2 Software provided to Defendant is Sheltered Harbor certified, it is not used for operations covered by claims of the patents in suit.  After investigating the matter, Plaintiff accepts Mr. Bumgardner's assertion as being accurate and consequently no longer asserts that Defendant's use of the Q2 Software infringes the patents-in-suit.").

stores with categorical filters as described and claimed in the DigitalDoors Patents), to achieve substantially the same results." *Id.*

In addition, DigitalDoors alleges that, upon information and belief, "such methods and systems are implemented by EagleBank in the form of a plurality of interconnected storage systems, which are comprised of hardware (including servers) and software (including source code)." *Id.* DigitalDoors further alleges that, upon information and belief:

> EagleBank provides data integrity and security for critical operations and critical customer data by secure vaulted storage of filtered data, implemented through systems such as StoneFly, a technology provider that works with secure systems for backup and disaster recovery which includes Veeam backup and replication, that infringes claims of the patents in suit.

*Id.* at ¶ 97. DigitalDoors contends that, "[c]ollectively, the foregoing components operate as a single controlled apparatus to provide secure data vaulting for the benefit of EagleBank, as specified by Sheltered Harbor or its operational equivalent." *Id.* at ¶ 98. But, DigitalDoors does not identify or name a specific product or system made, owned, operated or used by EagleBank that allegedly infringes on the Asserted Patents in the amended complaint. *See generally id.* It is also undisputed that EagleBank does not use a Sheltered Harbor-compliant system. *See* ECF No. 34-1 at 2-4 and 9-10; ECF No. 38 at 10-11; *see generally id.*; ECF No. 36 (failing to address assertion that EagleBank has informed DigitalDoors that it does not use a Sheltered Harbor-compliant system). As relief, DigitalDoors seeks declaratory and injunctive relief and to recover monetary damages, attorneys' fees and costs from EagleBank. ECF No. 29 at Prayer for Relief.

### B. Relevant Procedural Background

Digital Doors commenced this patent-infringement action on December 31, 2024. ECF No. 1. On May 19, 2025, DigitalDoors filed an amended complaint. ECF No. 29.

On July 8, 2025, EagleBank filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and memorandum in support thereof. ECF Nos. 34 and 34-1. On July 22, 2025, DigitalDoors filed a response in opposition to EagleBank's motion to dismiss. ECF No. 36. On August 5, 2025, EagleBank filed a reply brief. ECF No. 38.

The Defendant's motion having been fully briefed, the Court resolves the pending motion.

### III.     LEGAL STANDARDS

#### A.  Fed. R. Civ. P. 12(b)(6) And Patent-Infringement Claims

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of the plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

Relevant to the pending motion to dismiss, the United States Court of Appeals for the Federal Circuit has held that, at the motion-to-dismiss stage, direct patent-infringement claims are subject to the pleading standards established by *Twombly* and *Iqbal*.  *Golden v. Apple Inc.*, 819 F. App'x 930, 930-31 (Fed. Cir. 2020) (per curiam).  To avoid dismissal, "[t]here must be some allegation of specific services or products of the defendants which are being accused." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015); *see also Artrip v. Ball Corp.*, 735 F. App'x 708, 714–15 (Fed. Cir. 2018).  Given this, it is not enough for the plaintiff to allege, "you infringe my patent."  *Addiction & Detoxification Inst.*, 620 F. App'x at 937.  And so, the plaintiff must allege facts sufficient to place "a potential infringer . . . on notice of what activity or device is being accused of infringement."  *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013).

In addition, the "defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible."  *Id.* at 1286.  And

so, if a product is confidential or classified in nature such that the plaintiff cannot provide particular details about the allegedly infringing product, the plaintiff "must, at a minimum, make *that* assertion with some supporting, detailed factual allegations." *Maimon v. United States*, 175 Fed. Cl. 553, 562 (2025) (emphasis in original).

Lastly, the Federal Circuit has held that district courts can rely on industry standards when analyzing claims for patent infringement. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010). But the plaintiff cannot rely on compliance with the standard to state a patent-infringement claim when multiple implementations are possible. *Id.* at 1328. And so, the complaint must plead sufficient facts to: (1) establish that the patent covers "every possible implementation of [the] standard" or (2) "compare the claims to the accused products" or "prove that the accused products implement any relevant optional sections of the standard." *Id.* And so, "[i]f a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement." *Id.* at 1327.

## IV. ANALYSIS

EagleBank argues in its motion to dismiss that the Court should dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for the following three reasons: (1) the amended complaint fails to provide sufficient notice of the accused infringement, because it does not identify any infringing products made, used, or sold by EagleBank; (2) the amended complaint improperly alleges infringement based on the Sheltered Harbor certification; and (3) the amended complaint makes clear that the Asserted Patents are invalid, because DigitalDoors alleges that "[a]ll banks practicing proper data integrity and recovery frameworks" infringe the Asserted Patents. ECF No. 34-1 at 6-29. EagleBank also argues that the Court should dismiss the amended complaint, because DigitalDoors' pleading "on information and belief" is not sufficient to state a plausible patent-infringement claim. ECF No. 38 at 5-13. And so, EagleBank requests that the Court dismiss the amended complaint with prejudice. ECF No. 34 at 29; *id.* at 13.

DigitalDoors counters that the Court should not dismiss the amended complaint, because: (1) the accused instrumentalities are proprietary and confidential, and the amended complaint recites facts upon which one can reasonably expect that discovery will reveal evidence in support of the alleged acts of infringement; (2) the amended complaint

6

establishes a solid factual foundation in support of the allegation that the Sheltered Harbor system and its operational equivalents infringe the Asserted Patents; and (3) the amended complaint puts EagleBank on notice of its patent-infringement claims, by alleging how the Sheltered Harbor system and other industry systems constitute infringement. ECF No. 36 at 7-12. And so, DigitalDoors requests that the Court deny EagleBank's motion to dismiss. *Id.* at 12.

For the reasons that follow, a careful reading of the amended complaint makes clear that DigitalDoors does not assert plausible patent-infringement claims in this case, because: (1) the factual allegations in the amended complaint fail to identify the accused products or services that allegedly infringe the Asserted Patents; (2) it is undisputed that EagleBank does not use the Dell, StoneFly, or Veeam Systems cited in the amended complaint; and (3) DigitalDoors reliance on Sheltered Harbor is not sufficient to show patent infringement.[3] And so, the Court: (1) GRANTS-in-PART the Defendant's motion to dismiss (ECF No. 34) and (2) DISMISSES the amended complaint (ECF No. 29).

### A. The Amended Complaint Does Not Provide EagleBank With Proper Notice Of The Allegedly Infringing Products Or Systems

As an initial matter, the Court agrees with EagleBank that the amended complaint lacks sufficient factual allegations to put it on notice of the allegedly infringing products or systems made, used, or sold by EagleBank. To survive a motion to dismiss in this patent infringement matter, there must be some allegation of specific EagleBank services or products which are being accused in the amended complaint. *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015). And so, DigitalDoors must allege facts in the amended complaint that are sufficient to place EagleBank "on notice of what activity or device is being accused of infringement." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013).

In this case, the amended complaint neither identifies an EagleBank product or system that allegedly infringes on the Asserted Patents, nor alleges sufficient facts to identify such

---

[3] EagleBank also argues that the amended complaint fails to state a claim, because the statements in the amended complaint show that the Asserted Patents are invalid. ECF No. 34-1 at 27-29. Because the Court concludes that DigitalDoors fails to state plausible patent-infringement claims in the amended complaint, the Court does not reach this issue.

product or system. ECF No. 29 at ¶¶ 96 and 97 (alleging that EagleBank has "systems and methods for processing data in a distributed system" allegedly operated by EagleBank, "which are collectively compliant with the Sheltered Harbor specification" or its functional equivalent and that upon information and belief, "EagleBank provides data integrity and security for critical operations and critical customer data by secure vaulted storage of filtered data, implemented through systems such as StoneFly, a technology provider that works with secure systems for backup and disaster recovery which includes Veeam backup and replication, that infringes claims of the patents in suit."). The Federal Circuit has held that a complaint that simply alleges on information and belief that machines in the defendant's plants across the country infringe the asserted patents fails to sufficiently identify the accused machines, because it merely alleges that the defendant infringed the asserted patents. *Artrip v. Ball Corp.*, 735 F. App'x 708, 714-15 (Fed. Cir. 2018).[4] Given this, the vague factual allegations in the amended complaint do not put EagleBank "on notice of what activity . . . is being accused of infringement." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). And so, the Court must DISMISS the patent-infringement claims in the amended complaint. Fed. R. Civ. P. (b)(6).[5]

### B. DigitalDoors' Reliance On Sheltered Harbor Is Not Sufficient To Show Patent Infringement

EagleBank also persuasively argues that DigitalDoors' general allegation that Sheltered Harbor-compliant systems infringe the Asserted Patents is not sufficient to state a plausible patent-infringement claim in this case. In this regard, the Federal Circuit has held that a plaintiff cannot rely on compliance with an industry standard to show patent infringement, when multiple implementations of that standard are possible. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010). And so, the amended complaint must allege sufficient facts to either: (1) show that the asserted patent covers "every possible

---

[4] It is undisputed in this case that EagleBank does not use the Dell, StoneFly and Veeam systems that DigitalDoors identifies in the amended complaint. ECF No. 34 at 2-4 and 9-10; ECF No. 38 at 10-11; *see generally* ECF Nos. 29 and 36.

[5] DigitalDoors argues that dismissal of their patent-infringement claims is not warranted, because it is unable to provide the specific details of EagleBank's allegedly infringing products or systems, because the products or systems are proprietary and confidential in nature. ECF No. 36 at 7. But DigitalDoors fails to support this assertion with detailed factual allegations that are available to it, based on a reasonable pre-suit investigation. *See Maimon v. United States*, 175 Fed. Cl. 553, 562 (2025). Notably, the amended complaint does not allege any facts to show what DigitalDoors' pre-suit investigation showed regarding the confidentiality of EagleBank's products and systems. *See generally* ECF No. 29.

implementation of [the] standard" or (2) "compare the claims to the accused products" or "prove that the accused products implement any relevant optional sections of the standard." *Id.*

DigitalDoors has not made such a showing in this case for three reasons. First, DigitalDoors acknowledges in the amended complaint that Sheltered Harbor is not an industry standard—meaning that financial institutions like EagleBank are not required to be Sheltered Harbor-compliant to comport with Government security and data regulations. *See* ECF No. 29 at ¶¶ 17 and 66. There is also no dispute in this case that EagleBank does not use a Sheltered Harbor-compliant system. ECF No. 34 at 2-4 and 9-10; ECF No. 38 at 10-11; *see generally* ECF Nos. 29 and 36. Given this, the factual allegations in the amended complaint, take as true, are simply not sufficient to show patent infringement based on EagleBank being Sheltered Harbor-complaint.

Second, the amended complaint lacks facts to show that every possible implementation of the Sheltered Harbor industry standard infringes the Asserted Patents. *Fujitsu*, 620 F.3d at 1127-28. Indeed, in an essentially identical case brought by DigitalDoors in the Eastern District of Louisiana, DigitalDoors acknowledged that there is at least one technology that is Sheltered Harbor-certified that does not infringe the Asserted Patents. ECF No. 41-1 at 1 ("Defendant's counsel Barry Bumgardner (who is also counsel to Q2) recently advised Plaintiff that while the Q2 Software provided to Defendant is Sheltered Harbor certified, it is not used for operations covered by claims of the patents in suit. After investigating the matter, Plaintiff accepts Mr. Bumgardner's assertion as being accurate and consequently no longer asserts that Defendant's use of the Q2 Software infringes the patents-in-suit."). And so, DigitalDoors does not dispute that it is possible for a system to be Sheltered Harbor-compliant without infringing the Asserted Patents.

Lastly, a careful reading of the amended complaint also makes clear that DigitalDoors does not "compare the claims to the accused products" or "prove that the accused products implement any relevant optional sections of the standard." *Fujitsu*, 620 F.3d at 1328. Rather, the amended complaint merely asserts, without any supporting factual basis, that EagleBank uses a Sheltered Harbor-compliant system, like Dell, StoneFly or, Veeam, while acknowledging that Sheltered Harbor is not a standard-essential requirement. *See, e.g.*, ECF

9

No. 29 at ¶¶ 66, 97, 103, 133 and 169.  And so, for each of the above reasons, the Court must also DISMISS the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the Defendant's motion to dismiss (ECF No. 34); and

(2) **DISMISSES** the amended complaint (ECF No. 29).

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge